# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

THE FAMILY PLANNING ASSOCIATION
OF MAINE D/B/A MAINE FAMILY
PLANNING;

Plaintiff,

v.

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES;

ROBERT F. KENNEDY, JR., in his official
capacity as Secretary of Health and Human
Services;

CENTERS FOR MEDICARE &
MEDICAID SERVICES
and

MEHMET OZ, in his official capacity as the
Administrator of the Centers for Medicare &
Medicaid Services,

Defendants.

Case No. 1:25-cv-00364

**PLAINTIFF MAINE FAMILY PLANNING'S SUPPLEMENTAL BRIEF PURSUANT TO
COURT'S ORDER (ECF No. 28) IN SUPPORT OF ITS MOTION FOR TEMPORARY
RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

*Planned Parenthood of Minnesota v. Minnesota*, 612 F.2d 359 (8th Cir. 1980) ("*Planned Parenthood of Minnesota*"), *summ. aff'd*, 448 U.S. 901 (1980) undermines Defendants' attempted rationalizations for the Defunding Provision at every turn. Defendants have had ample opportunity to respond to *Planned Parenthood of Minnesota*'s application to this case. The government's failure to initially respond to Plaintiff's arguments is telling. As explained below, *Planned Parenthood of Minnesota* rejects the notion that it is rational to withdraw non-abortion funding from abortion providers to prevent "freeing-up" money to be used for abortion; it demonstrates that where lines are drawn between nonprofit abortion providers and other entities, those lines must be rationally related to the legislation's goals; and it reaffirms that a desire to harm a disfavored group is not a legitimate government interest.

In *Planned Parenthood of Minnesota*, the Eighth Circuit correctly affirmed the district court's holding that the Minnesota Family Planning Grants Act's exclusion of "any nonprofit corporation which performs abortions" from a pre-pregnancy family planning grant that appropriated $1,300,000 ("MN Appropriations Exclusion") violated the Equal Protection Clause under rational basis review. 612 F.2d at 360. Specifically, the Eighth Circuit affirmed the district court's conclusion that the MN Appropriations Exclusion was not rationally related to the governmental interest in ensuring that funding would not directly or indirectly go to abortion care and that no funding went to some nonprofits that performed abortions. *Id.* at 361; *id.* at 362-63 (finding no fault with district court's reasoning and rejecting government's additional justifications). The judgment was summarily affirmed by the U.S. Supreme Court. *Minnesota v. Planned Parenthood of Minnesota.*, 448 U.S. 901 (1980).

Given that the legal questions raised in *Planned Parenthood of Minnesota* are substantially similar to those at issue here, the Court should find that the Defunding Provision is unconstitutional

for the same reasons. The Defunding Provision is not rationally related to any legitimate governmental interest in reducing abortion or funding for abortion. Indeed, some of the same justifications advanced by Defendants in support of the Defunding Provision—that "money is fungible" and that non-profits may rationally be singled out for loss of funding, *see* Defs.' Opp'n to Pl.'s Mot. For Prelim. Inj., ECF No. 24 at 11-12 ("Defs.' Opp'n")—were considered and rejected in *Planned Parenthood of Minnesota*, 612 F.2d at 362-63. Additionally, the legislative history of the MN Appropriations Exclusion, like the history of the Defunding Provision, demonstrates that it was designed to target Planned Parenthood for disfavored treatment—which the Eighth Circuit found to be an insufficient justification for that law. *Planned Parenthood of Minnesota*, 612 F.2d at 361.

To the extent Defendants allege a purported factual distinction between the MN Appropriations Exclusion and the Defunding Provision based on the Defunding Provision's $800,000 cap or that only essential community providers are impacted, those minor differences are immaterial. *See Lyman v. Baker*, 352 F. Supp. 3d 81, 87 (D. Mass. 2018) (no evidence showed that the factual "distinctions [between the laws] make any meaningful difference in this case"), *aff'd*, 954 F.3d 351, 367-68 (1st Cir. 2020) (holding that a summary affirmance of Virginia's winner-take-all voting system against an equal protection challenge necessarily decided the "core equal protection issue" against the Massachusetts voting system in the present case).[1]

*First*, Defendants' argument "that withholding Medicaid funding from entities that perform abortions will discourage at least some of these abortions," Defs.' Opp'n at 12, was squarely rejected by the Eighth Circuit in *Planned Parenthood of Minnesota*. In that case, the state argued

---

[1] To the extent Defendants argue *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) undercuts the holding in *Planned Parenthood of Minnesota*, the argument fails because the Eighth Circuit specifically rejected applying "the strict scrutiny test . . . as applied in *Roe v. Wade*, 410 U.S. 113 (1973)," and instead applied rational basis review—the same standard that governs here. *Planned Parenthood of Minnesota*, 612 F.2d at 360.

that disbursing funding for pre-pregnancy family planning services to a provider that also offered abortion care would "free-up" money for abortion. *Planned Parenthood of Minnesota*, 612 F.2d at 361. The Eighth Circuit cited the unpublished district court's reasoning that the freeing-up theory had been rejected in other contexts as an illegitimate concern and adopted the district court's conclusion that, even if this were a legitimate concern, there was no evidence that restricted funding was being treated as fungible and used improperly. *Id.* Rather, as the Eighth Circuit noted, "Planned Parenthood's accounting procedures [were] more than adequate to insure that state money [was] not used for abortions nor allowed to free-up other money for abortions." *Id.* at 362.

Likewise, here, there is no rational connection between withholding federal Medicaid funding—which is never used for abortion outside of extremely limited exceptions—and reducing an entity's ability to provide abortion care. As in *Planned Parenthood of Minnesota*, the evidence belies Defendants' claim that the money at issue is fungible. Medicaid is reimbursements-based; it is not a block grant program, Decl. of Anne Marie Costello, ECF No. 24-1 ¶ 4—meaning that Medicaid does not offer providers a pot of money to redirect as they see fit. The Defunding Provision in fact is impacting Maine Family Planning's ("MFP") 's ability to serve primary care and family planning patients, not decreasing the number of abortions performed. Suppl. Decl. of Evelyn Kieltyka in Supp. Pl.'s Mot. for a TRO and/or Prelim. Inj. ¶ 8. Moreover, MFP has never been found to have misappropriated or misused federal funds for abortion care. Pl.'s Mem. Law in Supp. Plf.'s Mot. for a TRO and/or Prelim. Inj., ECF No. 5-3 at 13. The Eighth Circuit credited the district court's use of this type of evidence in rejecting the freeing-up theory, as the plaintiff in that case "routinely receive[d] restricted funding . . . [that was] carefully controlled and monitored." *Planned Parenthood of Minnesota*, 612 F.2d at 361.

*Second*, *Planned Parenthood of Minnesota* reaffirms that, when governments draw lines between which providers receive public funding and which do not, there must be some rational basis for those classifications. There, the Eighth Circuit affirmed the district court's conclusion that "there was no rational basis for the classification distinguishing between nonprofit organizations which are hospitals or HMOs and those which are not." *Id.* at 360 (internal citation omitted). Although the state highlighted various ways in which hospitals and HMOs were regulated differently than nonprofits, the Eighth Circuit held that these supposed differences were insufficient to justify differential treatment: "Not only must a classification be reasonable, it must rest upon some ground of difference *having a fair and substantial relation to the object of the legislation*." *Id.* at 362 (cleaned up) (emphasis added).

For the same reasons, the Defunding Provision's distinction between nonprofit organizations and other entities (or between essential community providers and non-essential community providers) bears no rational relationship to any legitimate government interest. Although Defendants claim that the rationale for singling out nonprofits is that a nonprofit is "already receiving such an implicit government subsidy (in the form of tax-exempt status)," Defs.' Opp'n at 9, that statement fails to explain why the law relies on this distinction to determine which entities to defund. Even assuming that tax-exempt status is akin to a cash grant, taking away funding for *non-abortion care* from nonprofits that perform abortions does not have a "fair and substantial relation" to decreasing abortion or funding for abortion. Indeed, the Eighth Circuit recognized the district court's evidentiary finding that Planned Parenthood's provision of "family planning counseling and contraceptive devices to women seeking abortions" would actually reduce the re-occurrence of abortions." *Planned Parenthood of Minnesota*, 612 F.2d at 361. Likewise, eliminating Medicaid reimbursements for family planning counseling and contraceptive care

provided at MFP clinics makes it more difficult for Mainers to access contraception, which could result in a higher number of unwanted pregnancies, and in turn, a higher number of abortions.

*Third*, the legislative history behind the MN Appropriation Exclusion showed that "Planned Parenthood's unpopularity played a large role in its passage" and that "unpopularity in and of itself and without reference to some independent considerations in the public interest cannot justify [the MN Appropriation Law]." *Id.* So too here. The legislative history is replete with evidence that the true purpose of the Defunding Provision is to target Planned Parenthood. *See Planned Parenthood Fed'n of Am. v. Kennedy*, No. 1:25-cv-11913, ECF No. 69 at 32 (D. Mass. July 28, 2025) (finding that Planned Parenthood Federation is likely to succeed in showing that it and its members "were the 'easily ascertainable' target" of the Defunding Provision). But animus against abortion providers "cannot constitute a legitimate governmental interest." *Planned Parenthood of Minnesota*, 612 F.2d at 360-61 (citing *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973)). Likewise, here, the Defunding Provision's legislative history makes clear that its true purpose is to weaponize governmental power against a disfavored group (which Defendants do not seriously dispute, *see* Defs.' Opp'n at 10). This naked attempt to punish abortion providers is not a legitimate government interest.

For all the reasons outlined above, consistent with *Planned Parenthood of Minnesota*, this Court should grant Plaintiff's motion for a temporary restraining order and/or a preliminary injunction.

Dated: August 15, 2025                     Respectfully submitted,

                                           /s/ Meetra Mehdizadeh
                                           Meetra Mehdizadeh*
                                           Astrid Marisela Ackerman*
                                           CENTER FOR REPRODUCTIVE RIGHTS
                                           199 Water Street, 22nd Floor
                                           New York, New York 10038

(917) 637-3788
mmehdizadeh@reprorights.org
aackerman@reprorights.org

Taylor Asen
Rosalie B.C. Wennberg
GIDEON ASEN LLC
95 Main Street, 4th Floor #5
Auburn, Maine 04210
(207) 206-8982
tasen@gideonasenlaw.com
rwennberg@gideonasenlaw.com

Faith Gay*
Joshua Margolin*
SELENDY GAY PLLC
1290 Avenue of the Americas 20th Floor
New York, NY 10104
(212) 390-9000
fgay@selendygay.com
jmargolin@selendygay.com

*Attorneys for Plaintiff*

*Admitted* pro hac vice