UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| THE FAMILY PLANNING ASSOCIATION OF MAINE d/b/a MAINE FAMILY PLANNING, <br><br>Plaintiff<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>ROBERT F. KENNEDY, JR. in his official capacity as Secretary of the Department of Health and Human Services,<br><br>CENTERS FOR MEDICARE & MEDICAID SERVICES, and<br><br>MEHMET OZ, in his official capacity as the Administrator of the Centers for Medicare & Medicaid Services,<br><br>Defendants | No. 1:25-cv-00364-LEW |

**ORDER ON MOTION FOR INJUNCTION PENDING APPEAL**

Plaintiff The Family Planning Association of Maine d/b/a Maine Family Planning seeks an injunction pending appeal. Pl.'s Emergency Mot. for Injunction Pending Appeal (ECF No. 33). On August 25, 2025, I issued an Order on Motion for Preliminary Injunction (ECF No. 31), in which I denied Plaintiff's request that the Court enjoin Defendants from

compliance with certain federal spending legislation pending the resolution of this litigation. The Rules require that I address Plaintiff's request for an injunction pending appeal in the first instance. *See* Fed. R. App. P. 8(a)(1)(C). The following discussion assumes the reader is familiar with the August 25 Order.

To secure from a district court injunctive relief pending appeal, "the moving party need not persuade the court that it is likely to be reversed on appeal." *Canterbury Liquors & Pantry v. Sullivan*, 999 F. Supp. 144, 150 (D. Mass. 1998). However, "more than a mere possibility of relief is required." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal quotation marks omitted). The provision of a stay pending appeal is a discretionary matter attuned to the circumstance of the case at hand. *Id*. at 433. The exercise of that discretion is guided by the moving party's ability to convincingly demonstrate the following: (1) likelihood of success on appeal; (2) irreparable harm absent injunctive relief; (3) a lack of substantial injury to others having an interest in the decision under appeal; and (4) service of the public interest. *Id*. at 434; *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*, 794 F.3d 168, 171 (1st Cir. 2015). Of these elements, the "first two factors are the most critical," *Respect Maine PAC v. McKee*, 622 F.3d 13, 15 (1st Cir. 2010), but failure to "show a strong likelihood of success" on appeal is an independent basis for denial of an injunction pending appeal, *id.*; *Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 16 (1st Cir. 2002) (per curiam); *In re Elias*, 182 Fed. App'x 3 (1st Cir. 2006) (per curiam).

Plaintiff argues that my previous assessment of the merits was misguided because each of the factors set forth in section 71113 of the One Big Beautiful Bill Act (hereafter

"BBB")[1] that disqualifies certain entities from receiving Medicaid reimbursement lacks a rational basis.  According to Plaintiff, the individual factors do not "advance" any governmental justification, Pl.'s Mem. of Law (ECF No. 33-1) at 7-10, and, consequently, are exposed as a naked act of discriminatory animus toward Planned Parenthood, *id.* at 4-7.

As indicated in the August 25 Order, Plaintiff's arguments against each of the several factors are well reasoned but amount to, in the end, a valorous debate performance on matters that are ultimately assigned to Congress.  The relief Plaintiff seeks is not available so long as there exists "any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Comms., Inc.*, 508 U.S. 307, 313 (1993).  The Equal Protection Clause "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Id.*  "The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." *Vance v. Bradley*, 440 U.S. 93, 97 (1979) (footnote omitted).  Consequently, even though Plaintiff's challenges are well reasoned and may persuade a large cross section of the public, Plaintiff still cannot win a mere rational basis contest where the light of reason shines on the choices made by Congress.  Unlike other legal contexts, persuading a judge that your reasoning is better

---

[1] Pub. L. No. 119-21, H.R. 1, 119th Cong. (2025).

does not ensure a victory in a rational basis regime. *Beach Comms.*, 508 U.S. at 313; *Vance v. Bradley*, 440 U.S. at 97.

Furthermore, while Plaintiff aims to kick each of the four legs out from under the disqualification provision, Plaintiff overlooks the fact that those factors, in combination, serve to identify the larger providers of non-qualifying abortion services in the United States, according to Congress, and Congress could rationally believe that these providers have the abortion reach they do in part thanks to their enjoyment of federal funding and tax-exempt status. In fact, Plaintiff appears to concede that the disqualification provision is meant to have precisely this targeting effect. And although Plaintiff observes that any targeting must not be the product of animus, unconstitutional animus is different than the generalized disfavor members of Congress may harbor based on deeply held views about controversial conduct coupled with a desire to reduce subsidies to or programmatic dependence on the major providers of non-qualifying abortion products and services. In fact, it is plausible that Congress means to advance the latter, permissible objective, even if certain members of Congress have in the past voiced some manner of political grudge against Planned Parenthood. Because the permissible course is plausible, my inquiry is supposed to be at an end. *United States v. Skrmetti*, 605 U.S. ---, 145 S. Ct. 1816, 1835 (2025).

"The rational basis inquiry 'employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one.'" *Id.* (quoting *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 314 (1976)). "Perfection in making the necessary classifications is neither possible

nor necessary." *Massachusetts Bd. of Ret.*, 427 U.S. at 314.  With section 71113 of the BBB, Congress appears to be doing with Medicaid spending what it routinely does in any number of other pieces of legislation, *i.e.*, drawing lines between preferred and disfavored conduct, based on a combination of factors.

Plaintiff also offers supplemental arguments concerning the precedential weight of *Planned Parenthood of Minnesota v. Minnesota*, 612 F.2d 359 (8th Cir. 1980), *sum. aff'd*, 448 U.S. 901 (1980).  Plaintiff argues that because the analysis there was not based on the constitutionality of abortion, the recent issuance of *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), has no importance or relevance to the merits of their equal protection challenge.  But that is like saying that a challenge to a firearm regulation would be stronger in the *absence* of the Second Amendment.  The fundamental nature of the right in question animates the deliberative process whether it is expressly acknowledged as causative to the outcome or not.  When a fundamental right is removed from the equation, normative (*i.e.*, policy) considerations are permitted and positive assessments about what is "most" rational are not supposed to dictate outcomes in a judicial venue.  *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979) ("The calculus of effects, the manner in which a particular law reverberates in a society, is a legislative and not a judicial responsibility.").

Additionally, *Planned Parenthood of Minnesota* was decided in 1980, not long after the Supreme Court decided *Roe v. Wade*, 410 U.S. 113 (1973).  The prohibition in *Minnesota* applied to any non-profit other than a hospital or health maintenance organization that performed any abortions at all, regardless of any distinction between what

5

are, for purposes of federal law, qualifying and non-qualifying abortions. 612 F.2d at 360. The current legislation draws a distinction between the two. Furthermore, the current legislation is drawn in the context of what members of Congress could fairly characterize as a steady outgrowth and increase of non-qualifying abortion provision over the course of 45 years due, in part, to a steady stream of federal subsidies under Medicaid and Title X—though neither statutory scheme is meant to compensate non-qualifying abortion care. In that time, certain providers—plausibly, those who meet all four of the criteria for prohibition—have come to be regarded within their respective regions as "Big Abortion," at least by members of Congress. That historical development modifies the factual controversy in this case sufficiently, for purposes of a rational basis inquiry, to step outside the precedential impact of the Supreme Court's unwritten summary affirmance in *Minnesota*. The District Court Judge who engaged in fact finding in *Minnesota* would not have anticipated that steady development any more than the Circuit Court judges and Supreme Court justices who reviewed the decision would have. *Allen v. Wright*, 468 U.S. 737, 764 (1984), *abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) (observing that a prior summary affirmance "could hardly establish principles contrary to those set out in opinions issued after full briefing and argument" (citing *Fusari v. Steinberg*, 419 U.S. 379, 392 (1975) (Burger, C. J., concurring))); *Fusari*, 419 U.S. at 391-92 ("When we summarily affirm, without opinion, . . . we affirm the judgment but not necessarily the reasoning by which it was reached. An unexplicated summary affirmance settles the issues for the parties, and is not to be read as a renunciation by this Court of doctrines previously announced in our opinions after full argument."

(Footnote omitted)); *Cent. Maine Power Co. v. Maine Comm'n on Gov'tal Ethics & Election Practices*, 144 F.4th 9, 23 n.5 (1st Cir. 2025) (citing *Anderson v. Celebrezze*, 460 U.S. 780, 784 n.5 (1983) (same)).

Plaintiff also critiques the significance of *Rust v. Sullivan*, 500 U.S. 173 (1991), on which I relied in part, because it involved challenges based on the First Amendment and the then, substantive due process right to abortion. The significance of *Rust* is in its relation to congressional leeway when it comes to imposing conditions in the context of a similar federal spending program (Title X) and the Court's decision to uphold conditions on the receipt of funding despite challenges based on fundamental rights, whereas the current case involves only non-suspect classifications. [2]

For the reasons articulated in the August 25 Order, I disagree with Plaintiff that, absent judicial policy ranking, it is likely to achieve a court ruling that Congress is

---

[2] Plaintiff suggests in a footnote that the August 25 Order asserted that corporations are not entitled to equal protection of the law. Pl.'s Emergency Mot. for Inj. Pending Appeal at 7, n.1. That is not an accurate interpretation of the Order. The reference to corporate entities was clearly modified to identify those serving congressional objectives in the context of a federal program, not to suggest that corporations are not protected by the Equal Protection Clause. *See* August 25 Order at 10 ("[T]he written Supreme Court opinions in this line all appear to involve profound irrationalities that target individuals for disfavored treatment rather than the selective treatment of entities enlisted through federal funding to carry out congressional objectives."). Plaintiff also suggests in the same footnote that I did not understand that the Equal Protection Clause could restrain congressional spending activities, but I quite clearly stated: "It is well-established that spending decisions must not offend the Equal Protection Clause." August 25 Order at 8. To the extent my language suggested reticence, that is simply because Plaintiff does not ask the Court to enjoin an Executive Branch's refusal to honor a spending bill enacted by the Legislative Branch, but rather to enjoin members of the Executive Branch to disregard a spending bill enacted by the Legislative Branch. Finally, Plaintiff's citation of *Regan v. Taxation With Representation of Washington*, 461 U.S. 540 (1983), only tends to reinforce my prediction on the merits of this case. *See id.* at 549 (observing that Congress can condition access to "largesse" in the nature of appropriations and tax exemptions as it wills).

constitutionally barred from charting a new legislative course—in the context of a federal spending program—that separates, incrementally, providers from the Medicaid funding stream based in part on concerns over the scope of such entities' reach when it comes to the provision of non-qualifying abortions or presumptions about the number of non-qualifying abortions they provide. Because I find that Plaintiff is not likely to succeed on the merits, I conclude that an injunction pending appeal is not warranted.

The Emergency Motion for Preliminary Injunction pending appeal (ECF No. 33) is DENIED.

SO ORDERED.

Dated this 8th day of September, 2025.

/s/ Lance E. Walker
Chief U.S. District Judge